ELIZABETH A. HUMPHREY *vs.* HENRY G. HOPPE.

Kennebec.     Opinion April 9, 1929.

*Ralph Farris,* for plaintiff.
*George W. Heselton,* for defendant.

SITTING: WILSON, C. J., DEASY, STURGIS, BARNES, BASSETT, JJ.
PHILBROOK, A. R. J.

PHILBROOK, A. R. J.   This is an action in tort to recover
damages for personal injuries suffered by reason of the alleged
negligence of the defendant. The plaintiff recovered a verdict for
$2,000. The case comes to the Law Court on defendant's excep-
tions and general motion for a new trial.

The parties were joint owners and managers of an enterprise
known as "Slumberland," which consisted of wayside lodging camps
located on a public road leading from Augusta to Waterville. The
road ran in a northerly and southerly course. Their residence,
store and camps stood on the westerly side of the road and a barn,
used as a garage, stood on the easterly side. Along the easterly side
of the road runs an electric car track. The distance between the
westerly sill of the barn and the easterly iron of the track is about
four or five feet. Electric cars, upon regular schedule time, passed
the barn hourly, going north about twenty minutes after, and south
twenty before the hour. Both parties had lived on the premises
about four years and it would be a reasonable presumption that
each had knowledge as to the passing time of the electric cars;
although the defendant denied having such knowledge at the time
of the accident.

On the afternoon of August 9, 1927, the defendant invited the
plaintiff to ride to Augusta with him in his automobile. In accord-
ance with the invitation the plaintiff crossed the road, entered the
barn, and took a seat in the automobile, which was standing with its
front end toward the open-door. After she had become seated, the
defendant closed the car door on the side where the plaintiff was
sitting, went to the other side of the car and, as he says, "looked
down and up the street and stepped into the car on my own side
of the car," but saw no electric car coming. There is credible tes-
timony in the record tending to show that one standing in front of
the barn and looking northerly could plainly see an approaching
electric car at a distance of eleven or twelve hundred feet. The
plaintiff testified, "I asked him if he looked to see if a car was com-
ing and he said he had." The defendant then drove his automobile
out of the barn, on to the electric car track, and collided with a

southbound electric car which was "very near on time" as testified by the conductor. As a result of this collision the plaintiff suffered her injuries. No negligence on the part of those operating the electric car is claimed. The negligence herein complained of is the failure of the defendant driver to use that degree of care which he owed to a gratuitous passenger. In addition to the plea of not guilty, the defendant alleged contributory negligence on the part of the plaintiff.

*Exceptions.* In the course of the trial the plaintiff claimed that on several occasions, after she was able to go about, her right leg gave out and she would fall down. By her counsel she was asked, "Referring to those spells you had in your leg when it let you down, state whether or not on November 30th your leg gave out on you as you described it?" This question was objected to by defendant's counsel and after discussion was withdrawn but immediately following that interrogatory, and the discussion of the same, other questions were asked, objected to and admitted, the nature of which may be better understood by calling attention to the fact that her right leg was injured by the accident of August 9, but in her fall of November 30 she broke her left ankle. Hence counsel for defendant objected to testimony regarding the injury of later date, and her suffering on account thereof, because it was an accident distinct from and independent of the one occurring on August 9, and for which no claim for damages was made in the declaration. From these questions, it appears that her several falls prior to November 30 occurred thus, to quote her own words, "I would be walking along, sometimes from the house to the store, and all at once I would have a pain take me across my back and down through my leg and I would fall." If the later accident was, in fact, distinct from and independent of the earlier one, then these questions and answers would have no proper place under the declaration; but if that later accident resulted from conditions created by the earlier one, and was a natural consequence thereof, then the testimony was admissible as showing the extent of the injuries caused by the earlier accident and as affecting the amount of damages to which the plaintiff might be entitled. The burden of proof as to this issue was upon the plaintiff. One of the medical witnesses called by the plaintiff, whose diagnosis of the case included inflammatory con-

dition of strain in the sacroilliac joint, testified that it might cause weakness of the leg which would be so marked as to occasionally cause falling. This was not expressly contradicted by any other medical witness, although those called by the defendant denied that there was any strain of the joint. Referring again to the question which was withdrawn, during discussion thereof, counsel for the plaintiff said that he was not claiming additional compensation for suffering on account of the fracture caused by the fall on November 30, that being at a time and place other than the accident on August 9, but to show that the original accident caused the leg to give out. Whereupon the Court said in the presence of the jury, "I will allow you to show her condition on November 30, as showing her physical condition at that time, and for that purpose alone. I will allow you to show that this suffering existed at that time, but with the understanding that I shall instruct the jury that they will not be justified in considering that about the question of damages." Although the question was withdrawn, yet as to the questions which followed, the defendant, in argument, complains that no instruction was given the jury to remedy the situation, and that appropriate instructions should have been given regarding separate and intervening causes. At the close of the charge, a long list of requested instructions was presented by defendant but in that list there is found no request for instruction as to separate and intervening causes, and no exception taken by reason of the failure of the presiding Justice to so instruct. This case was tried in the Superior Court and rule XLIV of that court provides that exceptions to any opinion, direction or omission of the presiding Justice in his charge to the jury must be noted before the jury retires, or all objections thereto will be regarded as waived.

The only other exception now relied upon (requested instruction number 4) is based upon the refusal of the Court to instruct that the duty of the gratuitous passenger, if she would avoid contributory negligence, is to exercise an independent care and warn the driver.

Upon that point the Court instructed the jury as follows: "One riding as a passenger or guest may not place his or her safety entirely in the keeping of the driver, but he or she must exercise due and reasonable care for his or her protection. If the plaintiff in

this case did exercise such a degree of care as a reasonably careful person would have done, and if the defendant was negligent, then she is entitled to a verdict for such damages as have been proved."

This instruction is in harmony with the law as declared by our court in so many cases that citations are not necessary, and we are of opinion that it was sufficient in this case.

*Motion.* Permeating the arguments of counsel are suggestions as to the relations between the parties, motives prompting the suit, the fact that the record defendant is only nominally such, and that the real defendant is an insurance company.

Such suggestions, if true, might be urged as affecting the credibility of the parties as witnesses, but from all the evidence the jury found for the plaintiff upon the questions of liability and amount of damages. From a careful study of the record, we do not feel that the Court should invade the province of the fact finders by overturning their verdict.

*Motion and exceptions overruled.*